UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
NIKITA PETTIES, et al.,                 )
                                        )
       Plaintiffs,                      )
                                        )
    v.                                  )   Civil Action No. 95-0148 (PLF)
                                        )
THE DISTRICT OF COLUMBIA, et al.,       )
                                        )
       Defendants.                      )
_____)

OPINION

          On April 7, 2006, the Court issued an Order granting the Transportation Administrator's Request for a Determination of his Authority to Enter into Collective Bargaining Agreements and into Contracts and ordering, *inter alia*, that under the terms of the Consent Order entered in this case on June 25, 2003 (the "Consent Order"), the Transportation Administrator has sole authority to negotiate new and renegotiate existing Collective Bargaining Agreements on behalf of the Division of Transportation. This Opinion explains the reasoning underlying that Order.

I. BACKGROUND

*A. The June 25, 2003 Consent Order*

          This class action lawsuit was brought in part to rectify the failure of the District of Columbia and the District of Columbia Public Schools ("DCPS") to fulfill their obligations under federal law to provide adequate transportation services to special education students. Defendants' failure to make significant progress towards meeting these obligations after the start

of this litigation, as well as their inability to comply with various interim Orders of the Court, led to the Court's appointment (with the consent of the parties) of an Administrator for DCPS' special education transportation on August 7, 2000. This Administrator was a DCPS employee who reported directly to the Superintendent of Schools. For the next two years, the Administrator tried without success to execute various interim plans designed (at the direction of the Court) to help bring special education transportation into compliance with federal law and ultimately to facilitate resolution of this litigation.

Based on the continuing failure to improve the transportation function under the leadership of a DCPS Administrator who reported to the Superintendent, on January 28, 2003, plaintiffs filed a Motion to Place the Transportation System into Receivership. Defendants vigorously objected to plaintiffs' request, and the issue was heavily litigated. Argument on the motion, including the presentation of testimony by live witnesses, was scheduled and then postponed. Ultimately, rather than proceed with oral argument and submit the plaintiffs' motion for the Court's consideration, defendants agreed to the appointment of an independent Transportation Administrator to "manage, supervise and assume responsibility for" the transportation operations of DCPS. The parties filed a proposed Consent Order implementing their agreement, and plaintiffs withdrew their motion to appoint a receiver. On June 25, 2003, the Court approved the Consent Order and appointed David Gilmore, the individual the parties had agreed upon, as the Transportation Administrator for DCPS special education ("TA").

The TA assumed leadership of the Division of Transportation of DCPS ("DOT"), and over the next two-and-a-half years significant progress has been made towards achieving compliance with defendants' obligations. Controversies have arisen between the TA and the

District of Columbia Public Schools, but the parties involved generally have been able to resolve these conflicts without the need for final adjudication by the Court.[1]

On December 28, 2005, however, the TA filed a request with the Court for a determination of his authority under the June 25, 2003 Consent Order to enter into collective bargaining agreements and contracts.  The TA's motion asked the Court to:  (1) declare invalid under the Consent Order a November 16, 2005, resolution passed by the D.C. Board of Education ("BOE") disapproving a Collective Bargaining Agreement ("CBA") entered into by the TA and the American Federation of State, County and Municipal Employees, Local 1959 ("AFSCME"); (2) declare invalid under the Consent Order another November 16, 2005, BOE resolution approving a Memorandum of Agreement between DCPS and the Teamsters Union Local 639 regarding an as-yet-unexecuted CBA; (3) declare that the TA has sole authority under the Consent Order to negotiate CBAs on behalf of DOT employees; and (4) declare that the TA has sole authority under the Consent Order to negotiate contracts for the procurement of real estate, other property, equipment and services for the DOT, without the need for approval by the Superintendent or the BOE.

Defendants opposed the TA's motion, while plaintiffs' class counsel filed a memorandum in support of the motion.  Defendants' opposition raised issues about the TA's conduct and his relationship with DCPS and with the Unions going well beyond the issues raised in the TA's motion.  Plaintiffs and the TA replied to defendants' opposition, and defendants filed

---

[1] On February 18, 2005, the TA filed a motion seeking the Court's intervention in a dispute between the TA and defendants regarding the DOT's FY 2005 budget as well as payment for training and travel costs for certain DOT employees.  See Transportation Administrator's Report and Request for a Hearing and Issuance of Orders.  The parties, however, were able to negotiate a resolution of this dispute, and the motion ultimately was withdrawn.

a surreply. The two unions whose respective CBAs are at issue here, AFSCME and the Teamsters, sought and were granted leave to file briefs *amicus curiae*.

Argument was heard on the TA's motion on March 17, 2006. Counsel for the TA, the parties, and the unions presented argument, as did the TA himself. On April 7, 2006, the Court issued an Order granting the TA's motion.

*B. Division of Transportation Labor Relations*

The primary issue raised by the Transportation Administrator, and argued in Court, is the scope and extent of the TA's authority under the Consent Order to enter into binding collective bargaining agreements with unions representing DOT employees.[2] The DOT has about 1500 employees, a substantial majority of whom historically have been part-time workers compensated at an hourly rate. Part-time DOT employees were (and are) represented in labor negotiations by AFSCME; full-time employees were represented by the Teamsters. In early 2005 the TA decided that the DOT could achieve greater efficiencies by eliminating full-time driver and bus attendant positions in favor of part-time positions. See Request of Transportation Administrator for Determination of his Authority to Enter into Collective Bargaining Agreements and into Contracts ("TA Mot.") at 28. To implement this policy, the TA in May 2005 proposed a reduction in force ("RIF") of all such full-time positions, while offering to transfer the affected full-time employees to analogous part-time positions. See Affidavit of Thomas Ratliss, Att. to

---

[2] The TA's initial motion also sought a determination from the Court regarding his authority to engage in the procurement of real property, while the defendants' response to his motion raised separate questions regarding the TA's conduct in the budgeting process for DOT and DCPS in general. As the parties acknowledged at the March 17, 2006 motions hearing, however, these issues are not ripe for resolution by the Court.

Amicus Curiae Memorandum of Teamsters Local Union No. 639 in Response to the Request of Transportation Administrator for Determination of his Authority to Enter into Collective Bargaining Agreements and into Contracts ("Teamsters Amicus Brief") ¶ 9(a).

The RIF encountered significant resistance from the Teamsters and the full-time DOT employees they represented, and the Teamsters filed an Unfair Labor Practices Complaint against the TA before the Public Employment Relations Board in March 2005. On June 16, 2005, the TA, Superintendent Clifford B. Janey, and the Teamsters entered into a Memorandum of Understanding canceling the RIF, withdrawing the unfair labor practices complaint, reclassifying (in title only) full-time drivers and attendants as "senior bus operators" and "senior attendants", and stating that the Teamsters would continue to represent at least 109 bus operators and attendants. See June 16, 2005 Memorandum of Understanding, Ex. C to Teamsters Amicus Brief.

In mid-2005, the TA and representatives of the Superintendent engaged in coordinated negotiations with AFSCME regarding a new CBA for AFSCME-represented DOT employees. According to defendants, in late summer of 2005 the TA "abandoned the collaborative process" and continued negotiations with AFSCME, but without DCPS involvement. See Defendants' Response to Request of Transportation Administrator for Determination of His Authority to Enter into Collective Bargaining Agreements and into Contracts ("Defs' Opp.") at 17-18. The TA reached a tentative agreement with AFSCME, and on September 15, 2005, he presented the proposed CBA to the Superintendent, stating that the CBA would be implemented by September 30, 2005. See TA Mot. at 6; Defs' Opp. at 19. Among the terms of the CBA were a wage increase for AFSCME-represented employees that

outpaced the wage increases under CBAs covering other DCPS employees, as well as (and, in the TA's opinion, more significantly) performance-based pay incentives. In presenting the CBA to the Superintendent, the TA acknowledged that the terms of the CBA were contrary to the bargaining strategy adopted by the Superintendent in his negotiations with AFSCME and other unions. See Defs' Opp. at 18-19.

Meanwhile, DCPS had reached tentative agreement on a new CBA for DCPS employees represented by the Teamsters. See Defs' Opp. at 20.[3] That agreement had been negotiated in the winter of 2004-05, before the arrival of Superintendent Janey, so that the proposed CBA had never been ratified by current DCPS leadership. Instead, in November 2005 Superintendent Janey signed a Memorandum of Agreement ("MOA") with the Teamsters, whereby the parties agreed to implement certain terms of the proposed CBA. See id. at 21-22.

On November 16, 2005, the BOE adopted two resolutions concerning the AFSCME CBA and the Teamsters MOA. The first states that, on the Superintendent's recommendation, "the D.C. Board of Education rejects the collective bargaining agreement between the Transportation Administrator and AFSCME[,]" and directs the Superintendent or his designee to resume collective bargaining with AFSCME. See Board of Education Resolution (unnumbered), Att. 1 to TA Mot. The second resolution – also passed on the Superintendent's recommendation – "approves" the MOA between DCPS and the Teamsters, authorizes the negotiated 2% wage increase for FY 2004, and transmits the MOA to the City Council for

---

[3] The Teamsters represent approximately 1400 DCPS employees not related to the transportation function beyond the 100 or so full-time DOT employees they represent.

approval pursuant to D.C. Code § 1-617.  See Board of Education Resolution R06-17, Att. 2. to TA Mot.

## II.  DISCUSSION

The Transportation Administrator argues that the plain language of the Consent Order authorizes him to negotiate collective bargaining agreements covering DOT employees and that, as a practical matter, such authority is essential to his role as an independent Administrator.  He further argues as a matter of policy that the agreement with AFSCME is critical to the future success of DOT "because it ties future compensation to achievement of increased efficiencies," thus providing a strong incentive for DOT employees to work towards achieving Petties compliance.  TA Mot. at 21-26.

Defendants dispute the TA's claims, first emphasizing that he is not a receiver, but only an administrator appointed by the Court with the consent of the parties.  See Defs' Opp. at 8.  They criticize what they refer to as the TA's "unilateral action" in several respects, including but not limited to the negotiations with AFSCME, and claim that the TA has "overstepped" his authority under the Consent Order.  They assert that, despite provisions of the Consent Order requiring the TA to engage the Superintendent and BOE in his decision-making process, the TA's consultation with these entities in the course of negotiating and executing the AFSCME agreement was *pro forma*, at best.  See Defs' Opp. at 18-20.

Defendants further argue that the TA's actions violated the requirement, expressed in Section B.8 of the Consent Order, that "The Transportation Administrator shall act in a manner consistent with the laws and regulations of the District of Columbia."  The provisions of

D.C. law they claim are implicated include: (1) D.C. Code § 1-617.15, stating that "[a]n agreement with a labor organization is subject to the approval of the Mayor" or, in the case of employees of the BOE, of the Board itself; (2) D.C. Code § 1-204.51(b)(1), stating that contracts "involving expenditures in excess of $ 1,000,000 during a 12-month period" must be submitted by the Mayor to the Council for approval; (3) D.C. Code § 1-204.24c(14), stating that it is the duty of the District's Chief Financial Officer to "certify[] all contracts (whether directly or through delegation) prior to execution as to the availability of funds to meet the obligations expected to be incurred by the District government under such contracts during the year"; and (4) Board of Education regulations codified at 5 DCMR §§ 706 and 706.2-3.

From a policy standpoint, defendants argue that allowing the TA unilaterally to negotiate an agreement with AFSCME – under which TA employees represented by AFSCME receive higher wage increases than other DCPS employees – would adversely affect DCPS' relations with other unions and their members. See Defs' Opp. at 16-17.[4] In their brief, the Teamsters also raise the possibility that the AFSCME CBA will "drive a wedge" between the Teamsters and AFSCME. See Teamsters Amicus Brief at 1-2, 9.

Despite these arguments, both the plain language and the purposes of the Consent Order – voluntarily entered into by the District of Columbia Government – make it clear that the TA does have the sole authority to enter into collective bargaining agreements covering DOT employees and that the BOE's resolution "disapproving" of the agreement with AFSCME violated the terms of the Consent Order and thus was invalid.

---

[4] DCPS employs about 13,000 workers, approximately 10,000 of whom are represented by one of six local unions with which DCPS has a CBA. See Defs' Opp. at 16-17.

Section A of the Consent Order states that it is among the TA's duties to "oversee, supervise and direct all financial, administrative, <u>and personnel functions</u> of DCPS Transportation, including payroll, <u>labor relations</u>, <u>employee benefits</u>, training, procurement and facilities management[.]" Consent Order § A.2 (emphasis added).  Section B states that the TA has "the power and authority necessary, and consistent with applicable law and this Order, to carry out his duties and responsibilities." <u>Id.</u> § B.  It is inconceivable that the authority to "oversee, supervise and direct" personnel functions and labor relations would not include the power to negotiate contracts with unions, especially where (as a practical matter) almost all personnel policies are set forth in the applicable CBAs.  Furthermore, the Order specifically enumerates as among the TA's powers "[t]he authority to establish personnel policies; to create, modify, abolish, or transfer positions; to hire, terminate, promote, transfer, evaluate, and set compensation for staff" and "[t]he authority to negotiate new, and renegotiate existing, contracts, agreements, and memoranda of understanding[.]" <u>Id.</u> § B.3-4.  Defendants have offered no reason to exempt collective bargaining agreements from the scope of the term "contracts" in this section of the Order.  Accordingly, the plain language of the Consent Order strongly supports the TA's position.

The TA's position also is consistent with the purpose and context of the Consent Order.  The TA was appointed only after years of defendants' manifest failure to fulfill their obligations to special education students.  By agreeing to the Consent Order, defendants averted the substantial possibility that the Court would grant plaintiffs' motion to put DOT into receivership, stripping DCPS entirely of its authority to manage the transportation function.  It was nonetheless clear that what was necessary at that point in the litigation – and what was

9

agreed to by the parties – was the appointment of a Transportation Administrator who would be independent of the Superintendent and the Board of Education.  This is stated in the Whereas clauses of the Consent Order, which express the District of Columbia's agreement as to the necessity of appointing "an <u>independent</u> Transportation Administrator . . . to manage, supervise and assume responsibility for the operations of DCPS's Transportation service[,]" as well as the District's agreement that the TA should possess "the requisite <u>independence and authority</u> to assume responsibility for the transportation needs of students with disabilities[.]"  Consent Order at 2 (emphasis added).  The Order did state that the District of Columbia was to remain "intimately involved and responsible for its obligations" to special education students, and that the TA was to remain "accessible to DCPS staff and leadership [and] responsive to D.C. students with disabilities and their parents."  <u>Id.</u>  Having so clearly stated its agreement to the appointment of an independent Administrator with authority for and responsibility over the transportation needs of special education students and the operation of DCPS's transportation services, however, the District of Columbia can hardly argue now that the position was meant to be subordinate to the Superintendent and the Board of Education in an arena as fundamental as labor relations.

        Defendants rightfully point out that the Consent Order provides that the TA must "act in a manner consistent with the laws and regulations of the District of Columbia."  Consent Order § B.8.  It does not follow from this, however, that the TA must, as defendants maintain, obtain the BOE's approval for CBAs under D.C. Code § 1-617.15, or that he must abide by the BOE's approval of a negotiating team and designation of a Chief Negotiator under 5 DCMR § 703.  By entering into the Consent Order, the District of Columbia, the District of Columbia

Public Schools, the Superintendent of Schools, and the Board of Education agreed that, pursuant to the authority granted to him under the Consent Order, the TA would – as counsel for the TA aptly put it at the motions hearing – "step into the shoes" of both the Superintendent of Schools and the Board of Education.  He thereby assumes the authority they would otherwise have under District of Columbia law on transportation matters for the school system.  While the TA remains bound by laws of general applicability – for example, D.C. Code § 1-204.51(b)(1), which requires the Council of the District of Columbia to approve any contract "involving expenditures in excess of $ 1,000,000 during a 12-month period" – after entry of the Consent Order he is not required to obtain the approval of the BOE or the Superintendent for decisions committed to his authority.  For all intents and purposes, so long as the Consent Order is in force, the TA _is_ the Superintendent _and_ the BOE with respect to the transportation responsibilities of DCPS.[5]

It also is clear that the Superintendent's recommendation to the BOE that it disapprove the AFSCME CBA, and the BOE's resolution doing so, violated the Consent Order.  Section D.3 of the Order provides that "[i]f the Transportation Administrator, after consultation with the Superintendent, acts in a manner to which the Superintendent objects, the Superintendent may file an objection with the Court for resolution of the dispute."  Furthermore, "[t]he Transportation Administrator's decision and actions shall be binding on Defendants, unless and until modified by the Court[.]"  The Superintendent did not file with the Court any objection to the TA's negotiation of the AFSCME CBA; rather, he circumvented the agreed-

---

[5]     The TA does _not_ dispute that laws of general applicability bind him, and with respect to D.C. Code § 1-204.51(b)(1), he has stated his intention to submit any such contracts to the Mayor and to the Council.  See TA Mot. at 20 & n.3; Reply of Transportation Administrator in Support of Request for Determination of his Authority to Enter into Collective Bargaining Agreements and into Contracts at 17.

upon process by going to the Board of Education.  When it became clear that there would be no agreement between the Superintendent and the TA, the proper course of action under the Consent Order would have been for the Superintendent to file an objection with the Court.  Furthermore, even if the TA had acted beyond the scope of his authority under the Consent Order, absent a determination to that effect by the Court, the TA's actions were binding on the defendants.  The BOE, in purporting to invalidate that action, would stand in violation of the Consent Order.

### III.  CONCLUSION

The Transportation Administrator's authority to negotiate collective bargaining agreements for employees of the DOT is clear from the language of the Consent Order and is entirely consistent with the purposes of the Order.  Indeed, the purpose and intent of the Order could not be served if the TA could not exercise such independent authority.  The actions of the Superintendent and the Board of Education in purporting to "disapprove" of the CBA the Transportation Administrator negotiated with AFSCME violated Section D.3 of the Consent Order.

The Court, the Superintendent, and the TA all hope that someday the transportation function will be sufficiently repaired that all parties to this class action will agree that the Consent Order will have served its purpose and can be dissolved.  In the absence of such agreement, the defendants can move at any time that the Consent Order be vacated, plaintiffs can oppose such a motion, and the Court will resolve it.  Whether plaintiffs would again seek the formal appointment of a receiver in such circumstances remains to be seen.  In the meantime, all parties to the June 25, 2003 Consent Order are obligated to abide by its terms.

For the foregoing reasons, the Court on April 7, 2006 granted the Transportation Administrator's motion.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: April 21, 2006